# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| KIERSTEN JO METTLER, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:18-CV-319-HAB |
| ANDREW SAUL,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Kiersten Jo Mettler seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income. Plaintiff alleges that she has been disabled due to a variety of physical and mental impairments since attaining the age of eighteen on June 10, 2013.

Plaintiff argues that the Administrative Law Judge (ALJ) erred: (1) by failing to incorporate the limiting effects from all her medically determinable impairments into the Residual Functional Capacity and failing to consider the combined impact of those limitation, and; (2) by using Plaintiff's "strong-in-context work history against her instead of as evidence showing her drive, desire, and attempts to work despite pain and limitations."

Defendant argues that the ALJ's decision should be affirmed because it is supported by substantial evidence.

**ANALYSIS**

**A.     The ALJ's Decision**

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"); 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A); § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the

claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)[1]; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since the amended alleged onset date, June 10, 2013. At step two, the ALJ found that Plaintiff had the severe impairments of cerebral palsy with lower extremity spasticity, loss of visual efficiency or visual impairment, legally blind right eye, restless leg syndrome, status post bilateral Achilles tendon lengthening and left hamstring lengthening. The ALJ noted additional impairments of a history of major motor seizures and anxiety, but found that they did not limit the Plaintiff's ability to perform basic work activities and were, thus, non-severe.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 21.) The ALJ considered listings 11.07 (Cerebral palsy), 11.04 (Central nervous systems vascular accident), 2.02 (Loss of visual acuity), 2.03 (Contraction of the visual field in the better eye) and 2.04 (Loss of visual efficiency).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(b) and 416.967(a). The RFC included numerous postural and environmental limitations such as occasionally lifting and/or carrying over 20 pounds; frequently lifting and/or carrying

---

[1] As discussed in *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003), the Act and implementing regulations regarding DIB (contained in Title II of the Act and 20 C.F.R. Pt. 404 of the regulations) and SSI (contained in Title XVI of the Act and 20 C.F.R. Pt. 416 of the regulations) are, for the most part, substantially identical. For convenience, the Court will generally cite herein to only the Title II statutes and regulations.

3

10 pounds; standing and/or walking for 2 hours; sitting for 6 hours; needs a sit/stand option; never climbing ladders, ropes and scaffolds; never balancing; occasionally climbing ramps and stairs; never balancing; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling; no exposure to hazards such as dangerous machinery with moving mechanical parts or unprotected heights, and; occasional pushing/pulling with the left lower extremity. According to the ALJ's RFC determination, Plaintiff had the visual ability to be able to avoid ordinary hazards in the workplace such as boxes on the floor, open doors, and approaching people or vehicles. Plaintiff was also able to frequently read fine print and ordinary newspaper or book print and view a computer screen. Finally, she was able to determine differences in shape and color of small objects such as screws, nuts, or bolts.

Plaintiff did not have any past relevant work. Based on the above RFC and Plaintiff's age, education, and work experience, the ALJ found, in reliance on testimony from a vocational expert, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B.    Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would

4

accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

## C. Residual Functional Capacity

Plaintiff argues that remand is necessary because the ALJ did not incorporate limitations from her medically determinable impairments, both severe and non-severe, into the RFC. Plaintiff's argument focuses first on non-exertional limitations related to anxiety. She avers that the ALJ should have ordered a psychological consultative exam if she had doubts regarding Plaintiff's "mental health type limitations." (Brief in Supp. 16, ECF No. 21.) Plaintiff then argues that the RFC does not account for all exertional limitations brought about by her impairment of cerebral palsy.

An ALJ must consider a claimant's medically determinable impairments, both severe and non-severe, in the aggregate in determining her RFC. When an ALJ determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918. "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to

6

consider the cumulative effect of impairments not totally disabling in themselves was an elementary error").

   1.   *Non-Exertional Limitations*

In Step 3 of the analysis, the ALJ considered Plaintiff's medically determinable mental impairment of anxiety. The ALJ noted that Plaintiff did not allege that she suffered from a mental impairment when she filed her application for disability benefits in December 2014. (R. 19.) However, in December 2016, Plaintiff's primary care physician diagnosed her with anxiety, and later started her on Lexapro (R. 19, 471.) The ALJ also acknowledged that Plaintiff reported decreased concentration, stress with school, and that she was having anxiety attacks. (R. 19–20, 469.) The ALJ noted that at times, Plaintiff demonstrated anxious or depressed mood and pressured/rapid speech at times, but at other times, her physician noted that she was oriented to person, place, and time with normal speech, behavior, thought content, cognition, memory, and judgment. (R. 20, 470, 471, 476, 483.) The ALJ also noted that Plaintiff told her physician that she was in counseling; however, the ALJ highlighted that there were no treatment notes from a mental health specialist contained in the record. (R. 20, 468.) In addition, the ALJ noted that Plaintiff testified that she had only been taking Lexapro for about two weeks prior to the hearing, that her other treatment records reflected few mental health abnormalities (she was mostly noted with intact memory and appropriate mood and affect), and that consultative examinations showed she was alert, oriented times three, and cooperative with clear speech and appropriate mental status. (R. 20, 415, 419, 428, 431, 454–57, 458–462). Further, the ALJ noted Plaintiff's statement that her anxiety occurred at the end of

7

the day, so she was apparently able to manage during the day without significant psychological symptoms. (R. 20, 469.)

The ALJ also considered the four broad areas of mental functioning set out in the disability regulations. In understanding, remembering, or applying information, Plaintiff had no more than mild limitations and was able to follow instructions. She was doing well in her college courses. Plaintiff had no limitations in getting along with others or adapting or managing oneself. A mild limitation in the functional area of concentrating, persisting, or maintaining pace existed because Plaintiff reported problems handling stress. However, she could deal with changes in routine. Plaintiff was attending college full-time and doing homework. Thus, the ALJ determined that Plaintiff's medically determinable mental impairment was not severe.

In the ALJ's RFC analysis, the ALJ acknowledged that Plaintiff testified she started counseling in January 2017 because of difficulty with childhood abuse, which she had previously tried to deal with on her own (R. 23). The ALJ also noted that she testified she had been taking Lexapro for depression for about two weeks prior to the hearing, and that depression affected her ability to do things because of a lack of motivation (*Id.*). Plaintiff also reported that she had been experiencing panic attacks three to four times per month from being overwhelmed by her tight schedule, but she had no problems getting along with other people (*Id.*). She further reported concentration problems at times, but no problems with memory. (*Id.*)

The ALJ discussed Plaintiff's mental health and symptomology. She also discussed Plaintiff's daily activities, which demonstrated a greater physical and psychological

function than Plaintiff alleged, including a capacity to engage in appropriate social interaction with people outside of a social circle. (R. 24.) Accordingly, it cannot be argued that the ALJ ignored Plaintiff's impairments in combination, including those that were not severe. Although the Plaintiff has framed the issue as a failure to incorporate mental health limitations, she not does not identify any symptoms that the ALJ failed to consider. Nor has she pointed to any medical opinions that the ALJ should have considered. There are no medical opinions of record to support restrictions related to anxiety. The basis of Plaintiff's appeal is her disagreement with the ALJ's assessment of those impairments, including the weight given the evidence. Plaintiff is improperly asking this Court to reweigh the evidence.

Plaintiff also contends that the ALJ was under a duty to obtain an evaluation to determine Plaintiff's psychological limitations. But it is Plaintiff who bore the burden of submitting medical evidence establishing her impairments and her RFC. *See* 20 C.F.R. §§ 404.1512(a), (c), 404.1513(a), (b), 404.1545(a)(3). If the evidence in a case record is insufficient, an ALJ *may* take steps to develop the record, such as recontacting treating sources or ordering a consultative examination. 20 C.F.R. §§ 404.1520b(b), 404.1520b(b)(2). The ALJ *may* seek a consultative exam to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a decision on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Plaintiff has not shown that the ALJ did not have sufficient evidence to make a determination whether she was disabled, or that there was some gap in the medical evidence that a consultative exam would have filled. The ALJ's decision discusses the

9

evidence of Plaintiff's medically determinable impairment of anxiety in great depth. (R. 19–21.) Courts are to give deference to an ALJ's decision about how much evidence is adequate to develop the record fully and what measures (including additional consultative examinations) are needed to accomplish that goal. *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011) (first citing *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); then citing *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993)). As with her other arguments related to her mental health, Plaintiff's appeal is a disagreement with the ALJ's assessment of the evidence, which is not a valid ground to appeal.

The Court concludes that the ALJ's decision not to include non-exertional limitations related to mental functioning in the RFC is supported by substantial evidence in the record.

### 2. *Exertional Limitations*

Plaintiff argues that the ALJ's RFC was defective in accounting for her cerebral palsy. For example, Plaintiff asserts that restrictions of a safety-sensitive work environment, opined as necessary by the consultative examiner (CE), must mean something more than protection from heights and dangerous machinery. Rather, because Plaintiff could only see the outline of the CE with her legally blind eye, her RFC should have included either a limitation that would permit her to walk at a reduced pace, or "limitations in fact making the work environment more safety-sensitive." (Brief in Supp. 18.) The Court does not find merit in Plaintiff's argument. The ALJ was aware that Plaintiff was legally blind in her right eye. He noted that she was able to drive with restrictions, and that her left eye vision was 20/20 without correction. He also noted

Plaintiff's ability to see the CE at three feet, but not his features. Consistent with this evidence, the ALJ found that Plaintiff was able to avoid ordinary hazards in the workplace, such as boxes on the floor, open doors, and approaching people or vehicles. There is no evidence in the record suggesting that Plaintiff's vision required that she walk at a pace that would impact her ability to perform work at the sedentary level. Plaintiff bore the burden of providing evidence establishing the degree to which her impairments limit her RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

As an additional ground for remand, Plaintiff asserts that her RFC contained no limitation related to the type of flooring she could maneuver even though she testified that she tripped most often on carpet or concrete. The ALJ noted Plaintiff's testimony that she falls, including on the day prior to her hearing. He also noted that she did not use a cane or other assistive device despite testifying to frequent falls. Moreover, although the CE opined that Plaintiff should walk in a safety sensitive work environment (R. 460), he made no indication that the flooring could not be traditional materials, such as carpet or concrete.

Plaintiff complains that "impairment-in-combination things like hand-eye coordination were not accounted for in the RFC, with no pacing and/or reaching limitations whatsoever." As with the other limitations suggested by Plaintiff on appeal, there is no support for such restrictions absent an improper reweighing of the evidence and usurping the ALJ's role. Plaintiff has not pointed to any instance where the ALJ ignored expert opinions to arrive at his own interpretations, failed to consider entire lines of evidence, or otherwise failed to build a logical bridge. The Court agrees with the ALJ's

11

assessment, as noted in her decision, that Plaintiff "failed her burden of establishing greater limitations of function" than those reflected in the RFC. (R. 23.)

The ALJ sufficiently connected the dots between Plaintiff's impairments, supported by substantial evidence in the record, and the RFC finding. This Court's role is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citations and alterations omitted).

**B.      Work History**

Plaintiff asserts that the ALJ should have taken a different view of her work history. Plaintiff contends that, despite her physical and mental health limitations, she worked some during high school. She also participated in show choir even though it regularly caused her to come up against her limitations. Further evidence of her work ethic is her maintenance of two part-time jobs. Plaintiff argues that the ALJ improperly used her work record against her when assessing her credibility.

Unless a credibility determination is so lacking in explanation or support that it is "patently wrong, it will not be overturned." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "Although a consistent work history weighs in favor of a positive credibility finding, it is still just 'one factor among many, and it is not dispositive.'" *Summers v. Berryhill*, 864 F.3d 523, 528-29 (7th Cir. 2017) (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). Here, the ALJ based her credibility finding on numerous factors, such as clinical reports, treatment history, and Plaintiff's activities of daily living, which historically included driving, working, preparing simple meals, doing dishes and

laundry, shopping, reading, walking, and handling finances. Additionally, Plaintiff testified that she babysat a five-year-old child two to three days a week and did household chores. The ALJ, relying on clinical notes, stated that Plaintiff worked two jobs and attended college Monday through Thursday. These activities, the ALJ determined, "illustrate greater physical and psychological function than alleged, with some ability to perform high-level daily activities irrespective of her symptoms." (R. 24.)

There is nothing patently wrong in the ALJ's analysis. Moreover, despite these activities, the ALJ found that Plaintiff had restrictions that limited her to a reduced range of sedentary work; she could sit for six hours of an eight-hour day, as long as she was allowed a sit/stand option. Additional limitations were included to address Plaintiff's vision and balance. Thus, the ALJ did not equate Plaintiff's ability to perform certain activities of daily living with an ability to work full time. Indeed, her RFC assessment is more limited than those of the State agency medical consultants concerning Plaintiff's ability to stand and walk.

Plaintiff's challenge to the ALJ's assessment of what Plaintiff could do, including her analysis of Plaintiff's statements about her limitations and symptoms, does not require remand.

**CONCLUSION**

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on February 11, 2020.

                                          s/ *Holly A. Brady*
                                          JUDGE HOLLY A. BRADY
                                          UNITED STATES DISTRICT COURT